UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
03-CV-1192(JMR/RLE)


David Kevin Thomsen                    )
                                       )
            v.                         )          ORDER
                                       )
Dick Ross, individually and as         )
former Crow Wing County Sheriff;       )
Crow Wing County Sheriff; County       )
of Crow Wing; Kurt King,               )
individually and as Crow Wing          )
County Jailer/Deputy Sheriff; and      )
John Doe and Jane Doe                  )


This matter is before the Court on cross-motions for summary judgment.[1] For the reasons set forth herein, plaintiff's motion is denied; defendants' motion is granted in part and denied in part.

I.  Background[2]

This case arises from events occurring at the beginning of plaintiff's nearly two-month stay at the Crow Wing County Jail, in

_____

[1]The parties' memoranda are cited as follows:  Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment ("Pl. Mem. in Support"); Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Pl. Mem. in Opposition"); Plaintiff's Reply Memorandum in Support of Plaintiff's Motion for Summary Judgment ("Pl. Reply"); Defendants' Memorandum of Law in Support of Motion for Summary Judgment ("Def. Mem."); Defendants' Reply Memorandum in Support of Defendants' Motion for Summary Judgment and Responsive Memorandum in Opposition to Plaintiff's Motion for Summary Judgment ("Def. Reply").

[2]Plaintiff and defendants tell widely varying stories.  All disputed facts are construed in the light most favorable to the non-movant.  Coleman v. Parkman, 349 F.3d 534, 536 (8th Cir. 2003). The facts stated here are for purposes of this Order, and do not reflect binding factual determinations.

the spring of 2002.

Plaintiff is an alcoholic.  He has alcoholic blackouts, and a history of arrests for driving while intoxicated.  One such event occurred the night of Friday, April 5, 2002, when a Brainerd police officer found plaintiff asleep at the wheel of his van.

Plaintiff was booked into the Crow Wing County Jail.  A test revealed his blood alcohol content was 0.22 percent.  Three officers escorted plaintiff from the booking area to a location where he could change into jail clothes.  On the way, the officers talked and laughed about a strip search.  Plaintiff asked if one was necessary, as he had never before been strip searched after an arrest.

Plaintiff then lost consciousness.  He awoke in a holding cell, wearing jail-issued boxers and a T-shirt.  His mouth was bloody, he was missing a tooth, and his left hand was painful and swollen.  A later examination showed he had re-fractured a bone in his left hand.

Plaintiff's recollection of the events of April 5 has been inconsistent and varied.  His Complaint, filed in February, 2003, claims he lost consciousness just after speaking with the officers about the strip search, and indicates he had no recollection of how he was injured.  (Complaint ¶ IX.)  This version is consistent with an unsworn statement plaintiff made while in jail.  (Affidavit of Kenneth Bayliss, Ex. H., at 001384; Affidavit of Michael O'Tool,

Ex. E.)

The Complaint's assertions vary from plaintiff's sworn interrogatory responses executed in December, 2003, where he states that, just before he lost consciousness, he was "grabbed forcefully" by defendant Kurt King.   (Plaintiff's Interrogatory Responses at 6, 21.)   A third version developed at his deposition taken in May, 2004, some two years after the incident.   At the deposition, plaintiff swore defendant King pulled his arm behind his back, and threw or pushed him to the floor.   (Thomsen Dep. at 66-67.)   None of these versions clearly states how his injuries were ultimately sustained.   He has no recollection of removing his clothes or being strip searched.

Defendants admit plaintiff was strip searched, but deny any assault.   Affidavits from three officers state plaintiff injured his hand by punching his cell wall.   The doctors who treated plaintiff in April and May, 2002, describe his injury as a "boxer's fracture," which is consistent with punching something.   (Bayliss Aff. Ex. M.)

Plaintiff is right-handed and denies ever punching the cell wall or door with his left hand.   All parties agree that, upon recovering consciousness, plaintiff banged on his cell door to get the officers' attention and request medical treatment.   Two officers responded to his call and observed

plaintiff's red and swollen hand.  When he was not immediately taken for medical treatment, plaintiff obscured the lens of his cell surveillance camera with wet toilet tissue to get the officers' attention.  The officers responded, placing him in a restraint chair for nearly an hour and forty-five minutes.

Plaintiff asked the jailers for medical attention several times that night and the next day.  On the morning of Sunday, April 7, he filled out a written inmate medical request form.  That evening, approximately 48 hours after being injured, he was driven to a hospital emergency room in a canine squad car.  Plaintiff sat in the rear seat next to a caged police dog.  At his deposition, he acknowledged that the dog presented no physical threat, but he complains of feeling intimidated by the animal.

While at the hospital, plaintiff was asked how his injury had occurred.  The custodial officer stated plaintiff had punched a wall or window, to which plaintiff agreed.  Plaintiff now claims he concurred, because he was too intimidated to dispute the officer's story, or to tell the doctor about the pain in his mouth from his missing tooth.

The emergency room doctor placed a cast on plaintiff's hand and recommended a follow-up visit to a specialist.  Five days later, plaintiff was taken to an orthopedic specialist who recommended surgery.  Plaintiff had a pre-operative physical on April 19, and surgery on April 22.  His post-operative course

included four follow-up visits over the next two months.  Plaintiff was prescribed and given pain medication several times a day during his entire stay in jail.

Plaintiff also claims that, beyond inattention to his medical needs for his hand injuries, his medical needs were ignored on two other occasions during his incarceration.  First, he says he waited half an hour to receive pain medication prescribed for his hand. He states that when he asked for the medication, an officer placed him in solitary confinement.  (Thomsen Dep. at 95-97.)  The officer, who is not named as a defendant here, was reprimanded and later apologized to plaintiff for this incident. (Thomsen Dep. at 95.)

The second occasion occurred when plaintiff requested assistance in drying his cast after it became wet in the shower. None was provided.  As plaintiff removed the softening cast, one of the pins in his hand fell out.  (Thomsen Dep. at 92-93, 102.)  Two days after requesting assistance, he was taken to the doctor to have his hand wrapped.  Plaintiff required additional surgery to reset the broken bone and to install an external fixation device.

Plaintiff also claims defendant Kurt King opened his legal mail outside of his presence on three occasions.  Crow Wing County policy calls for legal mail to be opened in an inmate's presence. Defendant King does not dispute he opened plaintiff's mail outside his presence.  According to plaintiff, King claimed it was an

accident and apologized.  (Thomsen Dep. at 134.)  Plaintiff claims his mail was opened in retaliation for his complaints.

Plaintiff timely filed this action in February, 2003.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

II.  <u>Analysis</u>

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact.  Fed. R. Civ. P. 56; <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 246 (1986).  The party opposing summary judgment may not rest upon the allegations set forth in its pleadings, but must produce significant probative evidence demonstrating a genuine issue for trial.  <u>See</u> <u>Anderson</u>, 477 U.S. at 248-49; <u>see also</u> <u>Hartnagel v. Norman</u>, 953 F.2d 394, 395-96 (8th Cir. 1992).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  <u>Anderson</u>, 477 U.S. at 247-48 (emphasis omitted).  If the opposing party fails to carry that burden, or fails to establish the existence of an essential element of its case on which that party will bear the burden of proof at trial, summary judgment should be granted.  <u>See</u> <u>Celotex</u>, 477 U.S. at 322.

A.   <u>Qualified Immunity</u>

Summary judgment is appropriate when a defendant is entitled to qualified immunity.  <u>Saucier v. Katz</u>, 533 U.S. 194, 202 (2001). Qualified immunity shields government officials from suit for official acts if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).  "Immunity should be decided by the court long before trial."  <u>Hunter v. Bryant</u>, 502 U.S. 224, 228 (1991).

When evaluating a qualified immunity claim, a court first determines whether the facts alleged show the officer's conduct violated a constitutional right.  <u>Saucier</u>, 533 U.S. at 201.  If so, the court must decide whether the violated right was clearly established at the time the violation occurred.  <u>Id.</u>  A right is clearly established only if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  <u>Id.</u> at 202; <u>see also</u> <u>Davis v. Hall</u>, 375 F.3d 703, 712 (8th Cir. 2004) ("Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.")

Here, the Court finds plaintiff cannot meet this test as to any named employee of Crow Wing County.  Accordingly, each

individual defendant[3] is entitled to summary judgment on the grounds of qualified immunity.

B.  Monell Claims

Notwithstanding any determination regarding individual defendants, a municipality may be liable under Section 1983 "where an official custom causes an individual to suffer a constitutional harm." Thelma D. v. Board of Education, 934 F.2d 929, 932 (8th Cir. 1991), citing Monell v. Dep't of Social Servs., 436 U.S. 658, 690-91 (1978).  A Section 1983 plaintiff must first identify the government policy in question.  Once identified, the court and jury must determine whether the policy is unconstitutional.  See Dick v. Watonwan County, 738 F.2d 939, 943 (8th Cir. 1984).  This official policy or custom must, of course, be the "moving force of the constitutional violation" to establish liability.  Monell, 436 U.S. at 694.  The existence of a policy or custom must be proven, because a municipality cannot be held liable solely on a respondeat superior theory.  Id. at 691.

For the reasons set forth herein, the Court finds plaintiff has stated a potential Monell claim against Crow Wing County only

---

[3]The only individual defendants are Dick Ross, former sheriff of Crow Wing County; and Kurt King, a jailer and deputy sheriff. Plaintiff named the "Crow Wing County Sheriff" in the caption.  If this is construed as a claim against Eric Klang, who was elected Sheriff after all of the above-described events occurred, the case against Sheriff Klang must be dismissed for failure to show he either knew or participated in any of these events.  Plaintiff also refers to "Defendant Munns" (Pl. Mem. in Support at 23), but the Complaint does not name Munns as a defendant.

with regard to its alleged strip search policy.[4]  Crow Wing County

is entitled to summary judgment on plaintiff's remaining federal

claims.  Plaintiff's claimed constitutional violations are analyzed

in turn.

   1.  <u>Strip Search</u>

   Plaintiff claims he was strip searched in violation of his

constitutional rights.   The Fourth Amendment[5] prohibits only

unreasonable searches.   <u>Goff v. Nix</u>, 803 F.2d 358, 363 (8th Cir.

1986).  In assessing the reasonableness of a strip search, the

Supreme Court calls for a "balancing of the need for the particular

search against the invasion of personal rights that the search

entails.   Courts must consider the scope of the particular

intrusion, the manner in which it is conducted, the justification

for initiating it, and the place in which it is conducted."  <u>Bell</u>

<u>v. Wolfish</u>, 441 U.S. 520, 559 (1979).  In <u>Bell</u>, the Supreme Court

found no Fourth Amendment violation when a jail's policy called for

---

   [4] Plaintiff's Complaint repeatedly claims the individual
defendants committed constitutional torts "in violation of the
rules and regulations of the Crow Wing County Sheriff's Department"
(<u>See</u>, <u>e.g.</u>, Complaint at 7, 9, 12, 17) and "in excess of their
official capacity" (<u>See</u>, <u>e.g.</u>, Complaint at 8, 10, 13).   These
assertions seriously undercut his claim that their actions were
committed pursuant to Crow Wing County policy.

   [5]Plaintiff asserts Fourth, Eighth and Fourteenth Amendment
violations arising from the strip search.   The Court finds the
Fourteenth Amendment is not implicated, and plaintiff has not
claimed conduct which suggests an Eighth Amendment violation.
<u>Goff</u>, 803 F.2d at 371.

visually searching inmate body cavities[6] after all contact visits. Id. at 588.

While plaintiff does not recall his search -- but only that he lost consciousness in one set of clothes and awoke in another -- defendants do not deny it occurred.  After considering the Bell factors, the Court finds a genuine issue of fact as to whether the strip search was reasonable under the Fourth Amendment.

The strip search, while intrusive, was not abusive.  There is no evidence of a body cavity search.  Contrast Bell, 441 U.S. at 558; Nelson v. Dicke, 2002 WL 511449 at *4 (D. Minn. 2002) (unpublished).  Plaintiff does not suggest he was searched in an inappropriate location.  Contrast Nelson, 2002 WL 511449 at *9 (body cavity search performed in storage closet); Starks v. City of Minneapolis, 6 F. Supp. 2d 1084, 1088 (D. Minn. 1998) (officer accused of on-street strip search); Young v. City of Little Rock, 249 F.3d 730, 736 (8th Cir. 2001) (officer performed strip search in front of six other detainees).  Plaintiff offers no facts supporting an inference that the search was harassing, humiliating, degrading, or retaliatory.  Contrast Seltzer-Bey v. Delo, 66 F.3d 961, 963 (8th Cir. 1995) (officer performed daily strip searches accompanied by harassing sexual comments); Swain v. Spinney, 117 F.3d 1, 8 (1st Cir. 1993) (officer directed strip search after failed interrogation).

---

[6]Bell concerned visual body cavity searches, which are more intrusive than strip, searches.  Bell, 441 U.S. at 558 (district court upheld strip searches but prohibited body cavity searches).

On the other hand, the need for a strip search is not clear. Strip searches for minor offense arrestees[7] are subject to a reasonable suspicion standard, requiring "individualized suspicion specifically directed to the person who is targeted for the strip search." McDonell v. Hunter, 809 F.2d 1302, 1307 (8th Cir. 1987). "This suspicion could be based on the nature of the offense, the detainee's criminal history, the demeanor of the individual, and the results of any other search" conducted by the officers. John Does 1-100 v. Boyd, 613 F. Supp. 1514, 1524 (D. Minn. 1985) (MacLaughlin, J.).

Minor offense detainees may be strip searched upon reasonable suspicion of concealed weapons or contraband. Justice v. City of Peachtree, 961 F.2d at 188, 193 (11th Cir. 1992) (detainee charged with loitering and truancy). Routine strip searches for "minor offenses unrelated to drugs, weapons or predatory conduct" have been found unreasonable. See John Does 1-100 v. Ninneman, 612 F. Supp. 1069, 1070 (D. Minn. 1985) (Devitt, J.). When there is no

---

[7]The parties disagree whether an aggravated DUI, a "gross misdemeanor," warrants a strip search. There is little authority on this point. For purposes here, the Court construes the point in plaintiff's favor: a "gross misdemeanor" may be considered a "minor offense" subject to the reasonable suspicion standard. See John Does 1-100 v. Boyd, 613 F. Supp. 1514, 1518-19 (D. Minn. 1985) (DUI arrestees are part of a class "arrested and held on minor offenses.") There are significant differences in penalties for misdemeanors and gross misdemeanors. Compare Minn. Stat. §§ 609.02, subd. 3 and 4; see Minnesota v. Girouard, SIP No. 04010080, at 2 (4th Dist. Hennepin Cty. August 3, 2004) (Rosenbaum, J.) (unpublished).

chance the detainee has secreted a weapon or contraband on his person, the Eighth Circuit Court of Appeals has found a strip search unjustified.  See Jones v. Edwards, 770 F.2d 739, 741 (8th Cir. 1985) (detainee taken into custody at home on warrant related to leash law violation, and closely observed by officers prior to arrival at jail).

This case presents a close question.  Plaintiff's charge carried a potential sentence of one year's imprisonment.  He was extremely intoxicated, with a ten-year arrest and incarceration history.  He had no prior history of drugs, weapons, or violent crimes.  A less intrusive pat-down revealed nothing.  The Court declines defendants' invitation to rule as a matter of law that an aggravated DUI charge, coupled with plaintiff's demeanor and history, amounted to reasonable suspicion.  A reasonable jury may well agree with defendants, but the evidence on this point does not compel them to do so.

Accordingly, the Court finds plaintiff has established an issue of fact as to whether the strip search violated his Fourth Amendment rights, thus fulfilling the first step of the qualified immunity analysis.

Plaintiff claims defendant Kurt King conducted the search. While this strip search may be problematic, the Court cannot find it was objectively unreasonable.  No federal or Minnesota court has announced a rule that strip searches of alleged gross misdemeanants

are a constitutional violation.  Absent a clear statement of law, the Court concludes defendant King is entitled to qualified immunity.

Plaintiff has also alleged a <u>Monell</u> claim against Crow Wing County.  Here, plaintiff has identified a written jail policy that, on its face, appears to authorize strip searches of all gross misdemeanant arrestees (such as plaintiff), with no requirement of a reasonable suspicion.  (Pl. Mem. in Support at 8, citing O'Tool Aff. Ex. K.)  The Court concludes that a reasonable jury could find this policy caused a violation of plaintiff's Fourth Amendment rights.  Accordingly, this claim survives defendants' motion for summary judgment.

Plaintiff's cross-motion for summary judgment on this claim is denied.  There remain disputed issues of fact regarding the reasonableness of the strip search, and the existence and implementation of the policy, which preclude summary judgment.

### 2. Excessive Force[8]

Plaintiff's Complaint and memorandum can be read to suggest a constitutional violation for an assault by Crow Wing County jail employees.  (Complaint ¶ XXXVI; Pl. Mem. in Support at 2-3.)  The

---

[8]Plaintiff's complaint claims he was "intentionally assaulted" by King and the Doe defendants (Compl. ¶ XXXVI).  His Memorandum in Support relates the facts of the supposed assault (Pl. Mem. in Support at 2-3).  But plaintiff has failed to respond to defendants' arguments in favor of summary judgment on this claim (Def. Mem. at 18-21).  This alone would justify dismissal of the assault and excessive force claims.

Fourteenth Amendment "protects a pretrial detainee from the use of excessive force that amounts to punishment." Graham v. Connor, 490 U.S. 386, 395 n. 10 (1989), citing Bell, 441 U.S. at 535-539.

Here, however, the Court finds scant evidence of force. Plaintiff, at least at the time of his Complaint, could not recall any. He lost a tooth and broke a hand, but the cause of these injuries is not at all clear. The officers have submitted affidavits swearing they never assaulted plaintiff, and plaintiff's Complaint does not assert the contrary. His personal notes say he remembers nothing between speaking of a strip search, and waking up, injured, in a holding cell. His interrogatory answers dated eighteen months after the incident claim he was "grabbed" by an officer. But later, while being deposed, he stated for the first time that the officer pulled his arm behind his back and threw him to the floor. The inconsistency of these statements is unexplained.

The Court holds, as a matter of law, that plaintiff's inconsistent recollections are insufficient to create an issue of fact as to whether an assault occurred. A party cannot avoid summary judgment by contradicting his own earlier testimony. Prosser v. Ross, 70 F.3d 1005, 1008 (8th Cir. 1995); Camfield Tires, Inc. v. Michelin Tire Corp., 719 F.2d 1361, 1365 (8th Cir. 1983). The Eighth Circuit has applied this rule to situations where plaintiff's earlier sworn testimony is contradicted by a later affidavit, see Camfield Tires, 719 F.2d at 1365, or by the sworn

14

testimony of a third party, see Prosser, 70 F.3d at 1008-09.  The
reasoning applies with equal force where earlier sworn statements,
personal notes taken near the event, and pleadings are contradicted
by a later deposition.

As the Eighth Circuit directs, this Court is "mindful of [its]
obligation to credit all evidence that favors the nonmovant," but
a Court need not "prune a witness's testimony so as to create a
triable issue when the witness flatly contradicts himself in other
parts of his testimony."  Prosser, 70 F.3d at 1009.  Here, such
pruning would be required, in the Court's view, for a reasonable
jury to find that plaintiff was assaulted.

Even if a jury credited plaintiff's late-recalled deposition
testimony saying defendant King grabbed and threw him to the floor,
there is absolutely no evidence showing King's actions rise to the
level of a constitutional violation.  "Not every assault or bodily
harm caused by a police officer means that a constitutional claim
may be asserted. . . .  [T]he conduct must be so egregious and
reckless that it may be deemed a substantive denial of due
process." Dale v. Janklow, 828 F.2d 481, 485 (8th Cir. 1987), cert.
denied, 485 U.S. 1014 (1988).  Even assuming King engaged in the
precise acts claimed during plaintiff's deposition, plaintiff has
not shown that the claimed actions caused his injuries.  One can
easily imagine an arm being pulled and a person being thrown to the
floor, but those imaginings do not at all equate to losing a tooth

or breaking a bone.  These injuries are unexplained in the absence of any evidence of causation.  It is neither for this Court, nor for a jury, to engage in conjecture concerning the existence of an unconstitutional act.

Plaintiff has failed to establish a constitutional violation. The individual defendants are entitled to qualified immunity.  Crow Wing County is entitled to summary judgment on the merits. Williams v. Davis, 200 F.3d 538, 538 (8th Cir. 2000).

3.  Denial of Medical Treatment

Plaintiff claims defendants violated his constitutional rights by denying him medical treatment.  The law recognizes deliberate indifference to a prisoner's serious medical needs as an Eighth Amendment violation.  Estelle v. Gamble, 429 U.S. 97, 104 (1976). The Eighth Amendment's protections are afforded to pretrial detainees through the Fourteenth Amendment.  Hartsfield v. Colburn, 371 F.3d 454, 457 (8th Cir. 2004).

In order to establish a constitutional claim for injury arising from deliberate indifference to serious medical needs, a plaintiff must "show (1) he suffered from an objectively serious medical need, and (2) defendants knew of the need yet deliberately disregarded it."  Id.  Here, plaintiff has failed to demonstrate a triable issue on either point.

Absent a medical diagnosis, a "serious medical need" is "one that is so obvious that even a layperson would easily recognize the

16

necessity for a doctor's attention." <u>Coleman v. Rahija</u>, 114 F.3d 778, 784 (8th Cir. 1997).  A broken hand can fall within this category.  <u>Beyerbach v. Sears</u>, 49 F.3d 1324, 1326 (8th Cir. 1995). This is a case where treatment was delayed rather than denied. Under these circumstances, "the objective seriousness of the deprivation should be measured by reference to the <u>effect</u> of the delay in treatment." <u>Id.</u>  Thus, plaintiff must present medical evidence to show that any treatment delay had a detrimental effect. <u>Id.</u> He is unable to do so.

Plaintiff has offered no medical evidence showing his red and swollen hand was "a critical or escalating situation" requiring immediate attention, or that the delay jeopardized his prognosis. <u>Id.</u> (delay in treating broken hand not a constitutional violation); <u>see also</u> <u>Sherrer v. Stephens</u>, 50 F.3d 496, 497 (8th Cir. 1994) (per curiam) (same, for broken index finger).  Setting aside plaintiff's hyperbole, claiming that "had [his] fracture . . . been more severe, he could have lost his hand with such a delay" (Pl. Mem. in Opposition at 5), plaintiff's claim must stand or fall on his actual injury.  Absent medical evidence, no reasonable jury could find plaintiff's medical needs so serious that a 48-hour delay amounts to a constitutional violation.  For this reason alone, plaintiff's claim cannot survive summary judgment.  <u>See</u> <u>Crowley v. Hedgepeth</u>, 109 F.3d 500, 502 (8th Cir. 1997).

Even if plaintiff could demonstrate a need for expedition,

his evidence fails to show that defendants were deliberately indifferent. Deliberate indifference means more than a slow response; it means the knowing failure to act when made aware of an "excessive risk to the inmate's health." Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996). As discussed above, plaintiff's hand injury presented no excessive risk; but in any case, it was treated within 48 hours.

Defendants took plaintiff to the hospital on the evening he made the written request. This was less than 48 hours after the swelling on his hand first appeared. Jail logs reflect, and plaintiff does not dispute, that plaintiff received medication several times daily. (Bayliss Aff. Ex. O.) Plaintiff does not claim jail officials caused the wet cast; that was his own fault. Two or three days later, as his cast began to break down, Crow Wing County officers took him for further treatment. Although a surgical pin was replaced, plaintiff has provided no medical evidence showing either that the pin would not have been replaced had he been seen within an hour of the cast being wet, or that the replacement caused any real complication. Contrast Hartsfield, 371 F.3d at 457 (reversing summary judgment for defendants who withheld treatment for six weeks after plaintiff's written request).

Plaintiff's constitutional claim of denied medical treatment therefore fails, and the individual defendants are entitled to qualified immunity. Any Monell claim against Crow Wing County

fails for want of a constitutional injury.  Accordingly, summary judgment for defendants is proper on plaintiff's claims based on denial of medical treatment.

4.  Opened Legal Mail

Plaintiff claims, and defendants admit, three attorney letters were opened outside of plaintiff's presence.  A jailer who opens a prisoner's legal mail outside of the prisoner's presence may violate a prisoner's constitutional rights.  Jensen v. Klecker, 648 F.2d 1179, 1182 (8th Cir. 1981), citing Wolff v. McDonnell, 418 U.S. 539, 576-77 (1974); see also Powells v. Minnehaha County Sheriff Dep't, 198 F.3d 711, 712 (8th Cir. 1999).  Claims based on the opening of a prisoner's legal mail may be analyzed as violations of either the Sixth Amendment right to counsel, or the Fourteenth Amendment right to court access.[9]  See Wolff, 418 U.S. at 576.

To establish Fourteenth Amendment standing, a plaintiff must show he has suffered an actual injury.  Lewis v. Casey, 518 U.S. 343, 349 (1996).  Here, plaintiff must demonstrate that opening three letters outside of his presence has hindered his effort to pursue a nonfrivolous legal claim.  Id. at 352; see also Cody v.

---

[9]Plaintiff's submissions address only the Sixth and Fourteenth amendments, abandoning claims under the First and Fifth amendments. (Pl. Mem. in Support at 18-22, Pl. Reply at 5-7.) These claims would fail in any event.  The First Amendment claim requires a showing of prejudice, which is absent here. Berdella v. Delo, 972 F.2d 204, 209-10 (8th Cir. 1992); Whitfield v. Dicker, 41 Fed. Appx. 6, 6 (8th Cir. 2002) (per curiam) (unpublished).  The Fifth Amendment claim is unsupported by any fact or law.

Weber, 256 F.3d 764, 768 (8th Cir. 2001), and Jones v. James, 38 F.3d 943, 945 (8th Cir. 1994) (showing of prejudice required for denial-of-access claim where no systemic denial at issue).  A showing of prejudice is required of pretrial detainees, as well as prisoners.  See Walker v. Navarro County Jail, 4 F.3d 410, 413 (5th Cir. 1993).

The Court finds, as a matter of law, that plaintiff has neither made the requisite showing nor presented a triable case on the question.  While three letters were opened, there is no evidence of a systemic violation of his rights.  The content of the letters shows there was no actual injury, they were simply notices of court hearings, copies of court opinions, and notices of meeting dates with the public defender.  Neither plaintiff nor his trial counsel have identified any conceivable way in which this information, even if read by jail officials, interfered with his defense or hindered his access to the courts.  There is no suggestion that plaintiff's criminal case was resolved less favorably because the letters were opened.

Plaintiff's Sixth Amendment claim fails for essentially the same reason:  failure to show prejudice from any interference with his mail.  No prejudice may be presumed, as for example where counsel "was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding."  United States v. Cronic, 466 U.S. 648, 659 and n. 25 (1984).  While the three

20

letters were opened improperly, plaintiff suffered no loss of counsel's assistance. The opened letters were not confiscated, nor did they prevent him from communicating with his attorney. Perhaps it was good fortune, but the communications did not address matters of defense strategy.

Plaintiff's assertion that he felt unable to freely correspond with his lawyer, even if accepted by a jury, simply does not rise to the level of a Sixth Amendment violation. See Lewis v. Cook County Bd. of Comm'rs, 6 Fed. Appx. 428, 430 (7th Cir. 2001) (unpublished) (affirming dismissal for failure to state a claim where plaintiff alleged nine pieces of legal mail were opened, causing no prejudice to legal claims but prompting plaintiff to suffer "chilling effects, stomach pains, insomnia, and fear at the denial of his right to attorney-client privilege").

Plaintiff's absence of injury or prejudice means he cannot establish a required element of a constitutional violation, and summary judgment must be granted as to all individual defendants. It has long been established that respect for the Sixth and Fourteenth Amendments obliges a jail to open legal mail in the inmate's presence to ensure it is not read, Wolff, 418 U.S. at 576-77; Jensen, 648 F.2d at 1182. The absence of injury in this case may be a mere fortuity, but that fortuity has occurred.

Plaintiff's Monell claim against Crow Wing County fails, first, for failure to demonstrate a constitutional injury, see

21

Williams, 200 F.3d at 538, and second, for failure to show a wrongful governmental policy or custom. Plaintiff acknowledges that Crow Wing County's policy calls for prisoner presence when legal mail is to be opened or inspected. (Pl. Mem. in Support at 8.) Plaintiff testified the officer who opened the mail apologized and called it a "mistake." (Thomsen Dep. at 134.) Plaintiff has failed to show that Crow Wing County policy was the reason his legal mail was opened outside of his presence.

Summary judgment for all defendants is proper as to the legal mail claim.

C. <u>Section 1985 Claims</u>

This is a claim of a civil rights conspiracy under 42 U.S.C. § 1985. To sustain this claim, plaintiff "must provide some facts suggesting a mutual understanding between defendants to commit unconstitutional acts." <u>Kurtz v. City of Shrewsbury</u>, 245 F.3d 753, 758 (8th Cir. 2001). He cannot do so here. The Court has already found no violations concerning interference with plaintiff's legal mail, delayed medical treatment, or excessive force allegations. These findings are fatal to his Section 1985 claims concerning these allegations.

The surviving strip search claim is insufficient to meet Section 1985's exacting standard. Plaintiff recalls nothing of the strip search, and has identified only Officer King who may have performed it. Even assuming plaintiff can prove defendant King

strip searched him, there is not a scintilla of evidence that King was aware he was violating plaintiff's rights.  Beyond this, one cannot conspire with himself, and there is no evidence of a conspiratorial agreement with anyone else.  See Andrews v. Fowler, 98 F.3d 1069, 1079 (8th Cir. 1996).  There is absolutely no evidence "that the conspiracy is fueled by some 'class-based, invidiously discriminatory animus.'"  Id.

Defendants are entitled to summary judgment on plaintiff's conspiracy claims.

D.  Minnesota Constitution

Plaintiff claims defendants violated the Minnesota Constitution's protection of access to counsel (Article I section 6) and its prohibition of unreasonable searches and seizures (Article I sections 7 and 10).  Section 1983 affords a remedy for violations of rights secured by federal statutes and the federal constitution.  Maine v. Thiboutot, 448 U.S. 1, 4 (1980).  It does not provide a remedy for any other rights violation.  See Kurtz, 245 F.3d at 758 (no remedy for false arrest or malicious prosecution).

Minnesota has not enacted a statute equivalent to § 1983, although Minnesota courts have recognized direct causes of action for violating certain sections of the Minnesota Constitution.  See, e.g., Skeen v. State, 505 N.W.2d 299, 302-03 (Minn. 1993) (education and equal protection clauses); Knudtson v. City of

<u>Coates</u>, 519 N.W.2d 166, 168-69 (Minn. 1994) (free expression clause).  The Court is mindful of the remedies clause of the Minnesota Constitution, which provides a "certain remedy in the laws" for injuries and wrongs.  Minn. Const. Art. I, § 8 (2004). Here, the Court assumes, without deciding, that a Minnesota court would recognize a private right of action to remedy violations of Article I, sections 6, 7 and 10.[10]

"Generally, absent a compelling reason, Minnesota courts apply federal interpretations to a state constitutional provision when the federal and state constitutional provisions are nearly identical."  <u>Schug v. Nine Thousand Nine Hundred Sixteen Dollars and Fifty Cents in U.S. Currency</u>, 669 N.W.2d 379, 384 (Minn. Ct. App. 2003).  To the extent plaintiff alleges a legal mail claim under Article I section 6 of the Minnesota Constitution, the Court's prior analysis is dispositive; defendants are entitled to summary judgment.  The same is true of plaintiff's claim under Article I section 7, which provides due process guarantees identical to those of the Fourteenth Amendment.  <u>See</u> <u>Humenansky v. Minnesota Bd. of Medical Examiners</u>, 525 N.W.2d 559, 565 (Minn. Ct. App. 1994).  The Court's previous Fourteenth Amendment analysis

_____

[10]Plaintiff offers no authority recognizing a private right of action for this claim.  Minnesota will exclude evidence obtained in violation of the Minnesota Constitution.  <u>See</u>, <u>e.g.</u>, <u>State v. Wiegand</u>, 645 N.W.2d 125, 137 (Minn. 2002) (reinstating district court's dismissal of charges based on suppression of fruits of unconstitutional search).

disposes of the question.

The Court next considers the strip search claim, where the Court has found a sustainable Fourth Amendment claim. Minnesota's Constitution Article I section 10 is identical to the federal Fourth Amendment. State v. Harris, 590 N.W.2d 90, 97 (Minn. 1999) (en banc). Here, Minnesota's courts generally have found its protections against unreasonable search and seizure to be co-extensive with those of the Fourth Amendment. See, e.g., id. at 100 (search of bus passenger); State v. Wiegand, 645 N.W.2d 125, 132-33 (Minn. 2002) (dog sniff around automobile).

There is a rare exception: The Minnesota Supreme Court has, when confronted with United States Supreme Court rulings limiting the Fourth Amendment's reach, found the reach of Minnesota's protection of unreasonable searches exceeds the ambit of the Fourth Amendment. See Wiegand, 645 N.W.2 at 132, citing In re Welfare of E.D.J., 502 N.W.2d 779, 780 (Minn. 1993) (declining to adopt rule articulated in California v. Hodari D., 499 U.S. 621 (1991)) and Ascher v. Comm'r of Public Safety, 519 N.W.2d 183, 186 (Minn. 1994) (declining to adopt rule articulated in Michigan Dep't of State Police v. Sitz, 496 U.S. 444 (1990)). Notwithstanding this narrow exception, the Minnesota Supreme Court has generally declined to expand Article I, section 10, where federal precedent does not represent "a radical or sharp departure" from past precedent. Wiegand, 645 N.W.2d at 132.

Plaintiff has not suggested that either <u>Bell v. Wolfish</u>, or any other federal strip search case, represents a radical or sharp departure from established Fourth Amendment precedent. Accordingly, any remedy potentially available to plaintiff for an alleged violation of his rights under the Minnesota Constitution is co-extensive with that available to him under Section 1983 for a violation of the Fourth Amendment. This claim survives summary judgment.

E.   <u>Minnesota State Law Claims</u>

1.   <u>Assault</u>

"An assault is an unlawful threat to do bodily harm to another with present ability to carry the threat into effect." <u>Dahlin v. Fraser</u>, 288 N.W. 851, 852 (Minn. 1939). Plaintiff claims he was assaulted twice; first, in the hallway where he claims he lost his tooth and broke his hand. He claims the strip search was a second assault. Plaintiff acknowledges that the hallway incident occurred without forewarning or threats, and therefore cannot constitute an assault because there was no threat. His strip search/assault claim fails based on his assertion that the officers said they were going to make the search. No Minnesota case has ever found such remarks to be "unlawful threat[s] to do bodily harm. Similarly, plaintiff's claim that, "by definition, removing, or forcing a person to remove, his cloth[e]s, and then inspecting his body is an assault," (Pl. Mem. in Support at 23), is without support in

26

Minnesota law.  As this Court, sitting in diversity, must apply the settled law of the host state, these claims fail.

## 2.    Intentional Infliction of Emotional Distress

A  plaintiff  claiming  intentional  infliction  of  emotional distress  must  prove  (1)  defendants'  conduct  was  extreme  and outrageous;  (2)  defendants'  conduct  was  intentional  and  reckless; (3)  defendants'  conduct  caused  the  plaintiff  emotional  distress; and  (4)  the  distress  was  severe.   K.A.C. v. Benson, 527 N.W.2d 553, 560  (Minn. 1995),  citing  Hubbard v. United Press Int'l, Inc., 330 N.W.2d 428, 438-39 (Minn. 1983).   Recovery  is  limited  to  situations "involving  particularly  egregious  facts,"  where  the  distress inflicted  is  "so  severe  that  no  reasonable  [person]  could  be expected  to  endure  it."   Hubbard, 330 N.W.2d at 439.

Conceding  all  disputed  facts  to  plaintiff,  defendants  (1) strip searched him while he was unconscious;  (2) waited 48 hours to provide medical treatment for a swollen hand, and three days before taking him for treatment resulting from a wet cast;  (3) took him to the hospital in a canine squad car;  (4) once wrongly failed to give him  pain  medication  when  requested;  and  (5)  three  times  wrongly opened  his  legal  mail.   While  the  plaintiff  understandably  found those  experiences,  of  which  he  was  conscious,  to  be  unpleasant,  the Court finds as a matter of law that they do not reflect conduct so "extreme  and  outrageous"  or  "intentional  and  reckless"  that  they are  "utterly  intolerable  in  a  civilized  society."   Hubbard, 330

N.W.2d at 440.

Even if the conduct rose to that level, plaintiff's claim would fail because he has offered absolutely no evidence of severe emotional distress. Plaintiff has no physical symptoms. He has neither sought nor received any related medical or psychological treatment. See id. (supporting medical evidence required to sustain claims of severe emotional distress where plaintiff alleged depression, skin disorders, high blood pressure).

Defendants are entitled to summary judgment on plaintiff's claims for intentional infliction of emotional distress.

### 3. Negligent Infliction of Emotional Distress

Plaintiff's claim of negligent infliction of emotional distress require a showing that he (1) was within a zone of danger of physical impact; (2) reasonably feared for his own safety; and (3) suffered severe emotional distress with attendant physical manifestations. K.A.C., 527 N.W.2d at 557. A "remote possibility of personal peril is insufficient" to place plaintiff within a zone of danger. Id. at 559.

To survive summary judgment, plaintiff again must produce evidence from which a reasonable jury could find he suffered "severe emotional distress with attendant physical manifestations." Id. at 557. While less severe distress may be required here than is required for a claim of intentional infliction of emotional distress, the complete absence of proof on the point would not

28

allow a reasonable jury to find for plaintiff. As a result, defendants are entitled to summary judgment.

    4. <u>Negligence</u>

Plaintiff's response to defendants' motion for summary judgment suggests defendants' 48-hour delay in providing medical treatment amounted to actionable negligence. (Pl. Mem. in Opposition at 5-6.) The essential elements of negligence are (1) the existence of a duty of care; (2) a breach of that duty; (3) an injury was sustained; and (4) the breach of the duty was the proximate cause of the injury. <u>Lubbers v. Anderson</u>, 539 N.W.2d 398, 401 (Minn. 1995). Because the record reflects a "complete lack of proof" on these essential elements, defendants are entitled to summary judgment. <u>Id.</u>

It is undisputed that defendants have a general duty to provide medical treatment to jail inmates, see Minn. Stat. § 641.15 (2004), and to exercise reasonable care to protect inmates from foreseeable harm. <u>See</u> <u>Cooney v. Hooks</u>, 535 N.W.2d 609, 610 (Minn. 1995); <u>Sandborg v. Blue Earth County</u>, 601 N.W.2d 192, 196-97 (Minn. Ct. App. 1999), <u>rev'd on other grounds</u>, 615 N.W.2d 61 (Minn. 2000); Restatement (Second) of Torts § 314A (4) and cmts. e, f (1965).

Here, the alleged negligent act was defendants' failure to obtain medical treatment for plaintiff's broken hand in less than 48 hours. Plaintiff must, at a minimum, show he suffered an injury

attributable to the delay, and that defendants' conduct was a "substantial factor in bringing about the injury." <u>Lubbers</u>, 539 N.W.2d at 401; <u>Blatz v. Allina Health Sys.</u>, 622 N.W.2d 376, 386 (Minn. Ct. App. 2001).   This plaintiff cannot do.   He has identified no injury arising from the 48-hour interval.  This is fatal to his claim.  <u>See</u> <u>Leubner v. Sterner</u>, 493 N.W.2d 119, 121 (Minn. 1992) (affirming summary judgment for doctor in medical malpractice action where patient could not identify cognizable injury resulting from delay in diagnosis and treatment).   Summary judgment for defendants is proper where plaintiff has presented no evidence that defendants' conduct caused him harm.  <u>See</u> <u>Bondy v. Allen</u>, 635 N.W.2d 244, 249 (Minn. Ct. App. 2001) (affirming summary judgment for ambulance company where no evidence linked any of pedestrian's injuries to paramedic's conduct); <u>Fairbanks v. Ketroser</u>, 1999 WL 118631, *2 (Minn. Ct. App. 1999) (unpublished) (affirming summary judgment for doctor on causation).[11]

---

[11]<u>Fairbanks v. Ketroser</u> offers an illuminating comparison. There, plaintiff experienced back pain on a Friday.  She called her doctor and explained her symptoms.   The doctor prescribed painkillers and scheduled a Monday morning appointment.   The plaintiff sought treatment on the intervening Saturday at an an emergency room.   She had surgery Monday afternoon.   Plaintiff claimed she suffered permanent neurological damage, which might have been avoided, had her doctor performed the surgery over the weekend.  The Court of Appeals affirmed a grant of summary judgment for her doctor, observing that plaintiff had presented no evidence showing the delay in treatment between Friday evening and Saturday morning -- when she visited the emergency room on her own -- proximately caused her injuries.   1999 WL 118631, *3.

No reasonable jury could find the 48-hour delay in treatment to be actionable negligence. Defendants are therefore entitled to summary judgment on this claim.

III. <u>Conclusion</u>

For the foregoing reasons, plaintiff's motion for summary judgment is denied. All claims against the Doe defendants, and any purported claims against Eric Klang, now Sheriff of Crow Wing County, are dismissed as a matter of law.

Summary judgment is granted to all individual defendants on the federal claims on the grounds of qualified immunity. Defendant Crow Wing County is granted summary judgment as to all of plaintiff's federal claims with the exception of the strip search claim.

Plaintiff's claim under the Minnesota Constitution, Article I section 10, survives summary judgment. Defendants are entitled to summary judgment on all of plaintiff's remaining state law claims.

Dated:  May 11, 2005

s/James M. Rosenbaum
JAMES M. ROSENBAUM
United States District Judge